UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK STOMPANATO, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | Judge |
| ) | |
| H.B. FULLER COMPANY ) | Magistrate Judge |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, Patrick Stompanato, ("STOMPANATO"), by his attorneys, Gaffney & Gaffney P.C., for his Complaint against Defendant, H.B. Fuller Company, ("HB FULLER"), states:

### Jurisdiction and Venue

1. This Court has jurisdiction on Plaintiff's claim brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.* and pursuant to STOMPANATO's claim brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et. seq.* This Court has arising under jurisdiction over STOMPANATO's ADA and ADEA Claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617 (a)(2).

2. This Court also has supplemental jurisdiction over STOMPANATO's state law claims for violation of the Illinois Wage Payment and Collection Act, ("IWPCA"), (820 ILCS 115/1, *et. seq.*), breach of contract, *quantum meruit*, and for common law retaliatory discharge pursuant to 28 U.S.C. § 1367, which are so related to the federal claim in this action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

3. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) over STOMPANATO's state law claims because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events or omissions giving rise to this action took place in this District.

## Parties

5. Plaintiff, STOMPANATO is a resident of Bloomingdale, DuPage County, Illinois, and a former employee of HB FULLER. STOMPANATO worked primarily out of his home office in Bloomingdale, Illinois.

6. Defendant, HB FULLER is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business at 1200 Willow Lake Blvd. St. Paul Minnesota 55110.

7. HB FULLER is a major American adhesives manufacturing and marketing company supplying industrial adhesives, sealants, coatings, paints, and other specialty chemical products worldwide.

8. HB FULLER and its wholly owned subsidiaries have a substantial presence in Illinois, employing many Illinois employees and operating a manufacturing facility in Palatine, Illinois and a wholly owned subsidiary headquartered in Aurora, Illinois.

9. HB FULLER is registered with the Illinois Secretary of State as an authorized foreign corporation with a registered agent in Chicago, Illinois; however, as of the filing of suit it is not in good standing.

**Common Allegations**

10. On or about March 4, 2013, HB FULLER hired STOMPANATO as a Territory Manager for the North American Adhesives Central Region, reporting to John Schrule, Geographic Sales Manager, Central Region, North American Adhesives. STOMPANATO was to work out of his home office in Bloomingdale, Illinois and he was to be compensated pursuant to the terms of the hiring letter, attached hereto as Exhibit A.

11. At all times relevant during his employment, STOMPANATO met or exceeded his expectations as an employee of HB FULLER.

12. On or about May 21, 2015, HB FULLER promoted STOMPANATO to the position of Senior Account Manager with an increase in his pay rate, effective June 1, 2015. In addition thereto, STOMPANATO was to continue to participate in the "70/30 Account Manager Sales Compensation Plan." A copy of the May 21, 2015, signed promotion letter and new compensation agreement is attached hereto as Exhibit B.

13. On or about September 11, 2014, STOMPANATO sustained a work-related injury. STOMPANATO reported the work-related injury to HB FULLER, who established an Illinois Workers Compensation Act claim number and claim file in conjunction with its insurance carrier for STOMPANATO's work-related injury.

14. Notwithstanding his work-related injury, STOMPANATO continued to perform the duties and responsibilities of his position through March 2, 2016. HB FULLER knew that STOMPONATO continued to work through March 2, 2016.

15. On or about March 2, 2016, HB FULLER terminated the employment of STOMPANATO effective April 1, 2016, purportedly on the basis that HB FULLER made a business decision to close his position of Senior Account Manager. This reason is false and

pretexual as his position was not in fact closed but rather transitioned to one or more other account managers.

16. STOMPANATO has complied with his administrative filing requirements pertaining to his claims herein brought pursuant to the provisions of the ADEA and ADA. On March 31, 2016, STOMPANATO filed a Charge of Discrimination (Charge No. 440-2016-03082) with the EEOC pursuant to the requirements of the ADA and ADEA. A copy of his EEOC charge is attached as Exhibit C. On June 9, 2016, the EEOC issued a Notice of Right to Sue on STOMPANATO's charge no. 440-2016-03082. A copy of the EEOC's Notice of Right to Sue is attached as Exhibit D. STOMPANATO also filed a second EEOC charge on or about June 16, 2016 to cover his failure to accommodate claims. A copy thereof is attached as Exhibit E and he will soon request a subsequent Notice of Right to Sue thereon.

17. STOMPANATO's *Workers' Compensation Act* claim arising out of STOMPANATO's work-related injury became contentious between HB FULLER and with the attorney STOMPONATO hired to represent him before the Industrial Commission which was distasteful to HB FULLER.

18. On or about August 11, 2015, HB FULLER's Vice President of Human Resources, Leah Cox, demanded and insisted that STOMPANATO remove his legal representative regarding his pending *Workers' Compensation Act* claim.

19. On or about August 15, 2015, the Vice President of HB FULLER's Packaging Division, Brad Zachman, stated to STOMPANATO in reference to his pending *Workers' Compensation Act* claim that "we should move to terminate you …we know that you have an attorney representing you."

20. Subsequent to Zachman's aforesaid statement, the Vice President of Human Resources, Leah Cox, stated to STOMPANATO, "we really need you to remove your attorney…it is in your best interest to remove your attorney."

21. STOMPANATO continued to perform all the duties and responsibilities of his position notwithstanding the fact that he had a work related injury and was accommodated, in part, pertaining to his restricted physical activities. With such accommodations, STOMPANATO was able to perform all of the essential duties and responsibilities of his position, his assigned accounts were well maintained and his clients and customers were satisfied.

22. Even though STOMPANATO was effectively accommodated and able to perform all the duties and responsibilities of his position which met HB FULLER'S reasonable expectations, on or about September 28, 2015, HB FULLER insisted that STOMPANATO be relegated to temporary total disability status and paid only in part under his pending Workers Compensation Act claim. STOMPANATO did not voluntarily request temporary total disability status and it was thrust upon him despite his desire to continue working as he had. STOMPANATO had to follow direction so as to not be insubordinate.

23. Subsequent to being involuntarily placed on temporary total disability status, STOMPANATO continued to work his duties and responsibilities in order to fulfill his job function. STOMPANATO continued to perform work and provide service at or near a full time basis.

24. HB FULLER knew that STOMPANATO was working at or near a full time basis even though he was on Worker's Compensation Act temporary total disability status and therefore did not receive his regular compensation.

## Count I – Americans with Disabilities Act Claim

STOMPANATO, by his attorneys, Gaffney & Gaffney P.C., for his Count I Claim brought pursuant to the Americans with Disabilities Act (ADA) against HB FULLER, states:

1-24. STOMPANATO incorporates herein paragraphs 1 through 24 as paragraphs 1 through 24 of this Count I as if fully set forth herein, verbatim.

25. STOMPANATO was disabled within the meaning and purview of the Americans with Disabilities Act, as amended (ADA). In the alternative, Plaintiff was regarded as disabled by HB FULLER and he had a medical history of a disability. HB FULLER knew of STOMPANATO's disability and regarded him as disabled even though he could work with a reasonable accommodation.

26. STOMPANATO was well-qualified to perform the duties and responsibilities of his position.

27. STOMPANATO sought reasonable accommodations because of his known disability. HB FULLER accommodated STOMPANATO's disabilities through September 28, 2015 but then on or about September 28, 2015 HB FULLER failed and refused to accommodate STOMPANATO in violation of the ADA.

28. HB FULLER failed and refused to consider STOMPANATO for any reasonable accommodation between September 28, 2015 and through the date of his termination on March 2, 2016 in violation of the ADA. As a result thereof, he was not compensated by HB FULLER.

29. HB FULLER retaliated against STOMPANATO by terminating his employment for pretextual reasons on or about March 2, 2016 and did so in violation of the ADA because STOMPANATO requested reasonable accommodations pursuant to the ADA.

30. On March 2, 2016, HB FULLER terminated the employment of STOMPANATO based upon his disability, perceived or regarded disability or because STOMPANATO had a history of a disability in violation of the ADA.

31. STOMPANATO was replaced by a non-disabled person.

32. As a proximate result thereof, Plaintiff has suffered and will continue to suffer substantial and irreparable injury, loss of income and other monetary benefits and as sustained compensatory damages.

33. HB FULLER's actions and violations of the ADA were intentional, willful, malicious and were committed with reckless indifference to STOMPANATO's federally protected rights.

34. Plaintiff demands trial by jury on Count I.

WHEREFORE, STOMPANATO seeks the following relief against HB FULLER.

 a. Enjoining HB FULLER from continuing its unlawful employment practices and reinstate STOMPANATO's employment with such other equitable relief this Court deems just;

 b. Grant STOMPANATO a judgement in such sum as may be deemed equitable and just for back pay, back benefits, front pay and benefits, and compensatory damages;

 c. Grant STOMPANATO a judgement as the Court of trier of fact deems equitable and just for punitive damages;

 d. Award Plaintiff reasonable attorney's fees and costs;

 e. Provide STOMPANATO such other legal and equitable relief as this court deems equitable and just pursuant to the provision of the ADA.

**Count II – Age Discrimination in Employment Act (ADEA) Claim**

STOMPANATO, by his attorneys, Gaffney & Gaffney P.C., for his Count II Claim brought pursuant to the Age Discrimination in Employment Act (ADEA) against HB FULLER, states:

1-24. STOMPANATO incorporates herein paragraphs 1 through 24 as paragraphs 1 through 24 of this Count II as if fully set forth herein, verbatim.

25. STOMPANATO's date of birth is October 26, 1969.

26. HB FULLER discriminated against STOMPANATO based upon stereotypes about his age, including a perception of a lack of ability to perform as well as younger employees.

27. HB FULLER discriminated against STOMPANATO because of his age in regards to the terms and conditions of his employment based upon its unlawful perception in violation of the ADEA.

28. On information and belief, after STOMPANATO was terminated for pretextual reasons, he was replaced by one or more younger employees.

29. STOMPANATO's termination of his employment on or about March 2, 2016 was based on unlawful age discrimination in violation of the ADEA.

30. Before his termination, STOMPANATO complained to members of HB FULLER's management and Human Resources Department about age discrimination and thereby engaged in protected conduct pursuant to the ADEA.

31. STOMPANATO's complaints of age discrimination and protected conduct was a substantial motivating factor in HB FULLER's decision to terminate STOMPANATO's employment.

32. STOMPANATO would not have been terminated but for the fact that he engaged in protected conduct pursuant to the ADEA.

33. The termination of STOMPANATO's employment was in retaliation for STOMPANATO's complaints and engagement in protected ADEA conduct.

34. As a direct and proximate result of the unlawful termination of his employment in violation of the ADEA, STOMPANATO has suffered and continues to suffer economic loss, damages, and other consequential damages.

35. HB FULLER's violation of the ADEA was intentional, willful, wanton, malicious and oppressive.

36. STOMPANATO requests trial by jury on this Count II.

WHEREFORE, STOMPANATO requests the following relief to the extent available pursuant to the provisions of the ADEA:

   a. Enjoining HB FULLER from continuing its unlawful employment practices and reinstate STOMPANATO's employment;
   b. Grant STOMPANATO a judgement in such sum as the Court may deem equitable and just for back-pay, back benefits, front pay and benefits, compensatory and liquidated damages;
   c. Award Plaintiff reasonable attorney fees and costs; and
   d. such other legal and equitable relief this Court deems equitable and just pursuant to the provisions of the ADEA.

## Count III – Breach of Contract

STOMPANATO, by his attorneys, Gaffney & Gaffney P.C., for his Count III Complaint for breach of contract against HB FULLER, states:

1-15. STOMPANATO incorporates herein paragraphs 1 through 15 as paragraphs 1 through 15 of this Count III as if fully set forth herein, verbatim.

16. STOMPANATO performed all conditions precedent that STOMPANATO was required to perform in order to receive all of the wages, benefits, and the "70/30 Account Manager Sales Compensation Plan" payments required to be paid to STOMPANATO pursuant to the provisions of the promotion letter and agreement attached as Exhibit B, from May 21, 2015, through the date of his termination in March, 2016.

17. HB FULLER has breached the parties' employment agreement in the following regards:

    a. HB FULLER failed to pay STOMPANATO his wages and benefits in full during the months from September 28, 2015, through March, 2016;

    b. HB FULLER failed to pay STOMPANATO his financial incentives pursuant to the "70/30 Account Manager Sales Compensation Plan" for the first quarter of 2016;

    c. HB FULLER has failed to pay STOMPANATO all of his accrued paid time off ("PTO"), which was required to be paid by HB FULLER after it terminated STOMPONATO in March, 2016.

18. As a direct and proximate result thereof, STOMPANATO has sustained damages. These damages include the loss of his full wages and financial incentive payments from September 28, 2015 through March, 2016, along with his unpaid PTO.

19. STOMPANATO demands a trial by jury on his Count III claim.

WHEREFORE, STOMPANATO seeks damages against HB FULLER in an amount in excess of $50,000.00, plus costs of suit.

**Count IV – Violation of the *Illinois Wage Payment and Collection Act*
(820 ILCS 115/1, *et. seq.*)**

STOMPANATO, by his attorneys, Gaffney & Gaffney P.C., for his Count IV Complaint for violation of the *Illinois Wage Payment and Collection Act*, ("IWPCA"), 820 ILCS 115/1, *et. seq.*, against HB FULLER, states:

1-19. STOMPANATO incorporates herein paragraphs 1 through 19 of Count III as paragraphs 1 through 19 of this Count IV as if fully set forth herein, verbatim.

20. At all times relevant, STOMPANATO was an "employee" of HB FULLER as defined by the *IWPCA*. 820 ILCS 115/2.

21. At all times relevant, HB FULLER was an "employer" as that term is defined by the *IWPCA*. 820 ILCS 115/2.

22. HB FULLER failed to pay STOMPANATO all his wages due on a timely basis between September 28, 2015 and March 2016 in violation of the IWPCA. 820 ILCS 115/3 & 4.

23. Following the termination of STOMPANATO's employment in March, 2016, HB FULLER violated the *IWPCA*, and continues to violate it, by failing to pay STOMPANATO his final compensation due and owing by no later than the next regularly scheduled payday following his employment termination and by continuing in such failure to the present date.

24. HB FULLER's violations of the *IWPCA* were and are willful and intentional. At all times, HB FULLER had the ability to pay STOMPANATO his wages in a timely fashion and has at all times continued to withhold the same.

25. As a direct and proximate result of HB FULLER's willful violation of the *IWPCA*, STOMPANATO has sustained damages.

WHEREFORE, STOMPANATO respectfully requests that this Honorable Court declare that HB FULLER has violated the *IWPCA* and:

A. Enter a judgment in the amount of unpaid wages due to STOMPANATO as provided by the *IWPCA*;

B. Award statutory damages in the amount of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid as set forth in 820 ILCS 115/14(a);

C. Award reasonable attorneys' fees and costs of this action as provided by the *IWPCA*; and

D. Grant such other and further relief as this Honorable Court deems just and proper under the instant circumstances.

## **Count V – *Quantum Meruit* (alternative claim)**

STOMPANATO, by his attorneys, Gaffney & Gaffney P.C., for his Count V Complaint in the alternative to STOMPANATO's breach of contract claim for *quantum meruit/unjust enrichment* against HB FULLER, states:

1-9. STOMPANATO incorporates herein paragraphs 1 through 9 as paragraphs 1 through 9 of this Count V as if fully set forth herein, verbatim.

10. On or about September 11, 2014, STOMPANATO sustained a work-related injury. STOMPANATO reported the work-related injury to HB FULLER, who established a claim number and claim file for STOMPANATO's work-related injury

11. STOMPANATO continued to perform all the duties and responsibilities of his position notwithstanding the fact that he had a work related injury and was accommodated, in part, pertaining to his physical activities. With such accommodations, STOMPANATO was able to perform all of the essential duties and responsibilities of his position and his assigned accounts were well maintained

12. Even though STOMPANATO was effectively accommodated and able to perform all the duties and responsibilities of his position which met HB FULLER'S reasonable expectations, on or about September 28, 2015, HB FULLER insisted that STOMPANATO be relegated to temporary total disability status under his pending Workers Compensation Act claim and demanded that STOMPANATO submit an FLMA request. STOMPANATO did not voluntarily request temporary total disability status and did not voluntarily request FLMA leave. Rather, STOMPANATO was directed in those regards and STOMPANATO abided by the direction so as to not be insubordinate and because he was not provided any alternative.

13. Subsequent to being involuntarily placed on temporary total disability status, STOMPANATO continued work his duties and responsibilities in order to perform his job function. STOMPANATO continued to perform those functions at or near a full time basis.

14. HB FULLER knew that STOMPANATO was working at or near a full time basis even though he was on temporary total disability status.

15. Subsequent to September 28, 2015, STOMPANATO provided employment services that were not gratuitously provided, but rather it was anticipated that STOMPANATO would be compensated for his services rendered.

16. HB FULLER accepted STOMPANATO's employment services and did so knowing that those services were not gratuitously rendered but should be compensated.

17. As an alternative theory of recovery to STOMPANATO's breach of contract claim, in the event the court finds that there is not an enforceable contract of employment subsequent to September 28, 2015, then HB FULLER would receive an unjust enrichment for all the valuable employment services rendered by STOMPANATO from September 28, 2015

through his employment termination and STOMPANATO would have incurred a concomitant detriment.

18. To the extent there is no legally enforceable contract for salary, commissions and benefits subsequent to September 28, 2015, in equity and good conscience, and pursuant to the Illinois doctrine of *quantum meruit/unjust enrichment*, HB FULLER should not accept all of those employment services rendered by STOMPANATO without compensating STOMPANATO for the reasonable and fair value of those services rendered.

19. To the extent STOMPANATO has no enforceable contractual claim for compensation, benefits and commissions subsequent to September 28, 2015, then this court should find in equity, the reasonable and fair amount of compensation due STOMPANATO for his services rendered to HB FULLER so as to prevent an unjust enrichment to HB FULLER and an unjust detriment to STOMPANATO.

WHEREFORE, STOMPANATO request that this court find, as an alternative remedy to STOMPANATO's breach of contract claim, that subsequent to September 28, 2015, STOMPANATO performed valuable services for HB FULLER to which HB FULLER has not compensated STOMPANATO and as a result thereof make a finding as to the amount due and payable to STOMPANATO for a fair, reasonable and equitable amount for those services rendered.

## Count VI – Common Law Retaliatory Discharge Action

STOMPANATO, by his attorneys, Gaffney & Gaffney P.C., for his Count VI Complaint for common law retaliatory discharge against HB FULLER, states:

1-15. STOMPANATO incorporates herein paragraphs 1 through 15 as paragraphs 1 through 15 of this Count VI as if fully set forth herein, verbatim.

16. During the second half of 2015 and 2016, STOMPANATO's *Workers' Compensation Act* claim arising out of STOMPANATO's work-related injury became contentious with the attorney STOMPONATO hired to represent him before the Industrial Commission which was distasteful to HB FULLER.

17. On or about August 11, 2015, HB FULLER's Vice President of Human Resources, Leah Cox, demanded and insisted that STOMPANATO remove his legal representative regarding his pending *Workers' Compensation Act* claim.

18. On or about August 15, 2015, the Vice President of HB FULLER's Packaging Division, Brad Zachman, stated to STOMPANATO in reference to his pending *Workers' Compensation Act* claim that "we should move to terminate you …we know that you have an attorney representing you."

19. Subsequent to Zachman's aforesaid statement, the Vice President of Human Resources, Leah Cox, stated to STOMPANATO, "we really need you to remove your attorney…it is in your best interest to remove your attorney."

20. In November, 2015, STOMPANATO had hip surgery because of a micro-fracture to his hip, which was related to his *Workers' Compensation Act* injury and claim. STOMPONATO included the medical invoices from that surgery as part of his pending claim. This was costly and added to the incentive of HB FULLER to terminate STOMPONATO.

21. The fact that STOMPANATO filed a claim for benefits under the *Illinois Workers' Compensation Act*, vigorously prosecuted that claim through his attorney, continued to use medical benefits under that claim, and refused to undermine his legal rights by removing his attorney from the claim were substantial contributing factors in HB FULLER's decision to terminate STOMPANATO's employment.

22. HB FULLER would not have terminated STOMPANATO's employment but for STOMPANATO's lawful prosecution of his claim for benefits and his exercise of his rights or remedies under the *Illinois Workers' Compensation Act*.

23. The *Illinois Workers' Compensation Act*, 820 ILCS 305/4(h) provides as follows:

> It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge . . . an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

24. It is contrary to clearly mandated Illinois public policy for an employer to terminate the employment of an employee because that employee has exercised his rights or remedies under the *Illinois Workers' Compensation Act*.

25. The termination of STOMPANATO's employment by HB FULLER constitutes a violation of clearly mandated Illinois public policy and constitutes an unlawful retaliatory discharge.

26. As a direct and proximate result thereof, STOMPANATO has sustained damages including lost wages, benefits, future wages, loss of earning potential, emotional harm and other compensatory damages.

27. HB FULLER's unlawful retaliatory discharge of STOMPANATO was willful, wanton, intentional and in reckless disregard of STOMPANATO's rights to not be subjected to a retaliatory discharge. As a result, HB FULLER should be responsible for punitive damages in addition to compensatory damages.

28. STOMPANATO demands a trial by jury on his Count VI claim.

WHEREFORE, STOMPANATO seeks damages against HB FULLER for actual and compensatory damages in an amount in excess of $250,000.00, plus punitive damages and costs of suit.

                                                  /s/Glenn R. Gaffney
                                                  Glenn R. Gaffney, Attorney for
                                                  Patrick Stompanato

### **JURY DEMAND**

Plaintiff seeks trial by jury on Counts I, II, III, and VI and an advisory jury on all Claims or issues not subject to trial by jury.

                                                  /s/ Glenn R. Gaffney
                                                  Glenn R Gaffney, Attorney for
                                                  Patrick Stompanato

Glenn R. Gaffney (No. 6180598)
Justin R. Gaffney (No. 6281428)
Jolianne S. Walters (No. 6314222)
Gaffney & Gaffney P.C.
1771 Bloomingdale Road,
Glendale Heights, IL 60139
(630) 462-1200
*gg@gaffneylaw.co*
*jw@gaffneylaw.co*